# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| WEC HOLDINGS, LLC a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK ALICIO JUAREZ III, also known as FRANK SHAMROCK, individually and doing business as STRIKER SPORTS; GALVANT ENTERTAINMENT, INC., a Nevada corporation; PRIME MULTIMEDIA, LLC, an Arizona limited liability company; SYNERGY MEDIA GROUP, INC., doing business as SYNERGY DISTRIBUTION, a Colorado corporation,<br><br>Defendants. | 2:07-CV-00137-BES-PAL<br><br>**ORDER** |

Before the Court is Defendant Frank Alicio Juarez III's ("Defendant") Motion to Dismiss (#43), filed August 9, 2007. The Court has also considered Plaintiff's Opposition (#44), filed August 27, 2007, and Defendant's Reply (#45), filed September 7, 2007.

## BACKGROUND

This dispute concerns Defendant's alleged wrongful use of Plaintiff's trademarks in the production, distribution and marketing of a DVD which provides footage of a mixed martial arts event held on March 27, 2003, at the Palace Indian Gaming Center in Lemoore, California.

Plaintiff is a private company that promotes mixed martial arts contests and events. (Amended Complaint (#42) at ¶ 11-13). Defendant is a mixed martial arts fighter who participates in mixed martial arts contests and events. Id. at ¶ 16-17. On March 3, 2003, Plaintiff and Defendant entered into an agreement for Defendant to participate in a mixed martial arts event promoted by Plaintiff. Id. at ¶ 21-22. A copy of the agreement is attached to the Amended Complaint as Exhibit 1. The event was called "WEC 6 - Return of a Legend." Id. at ¶ 25.

According to the pertinent provisions of the agreement between the parties, the Plaintiff and Defendant were to "share equally in the right, in perpetuity, through out the world to exploit the Event by any means and any manner and in any media now known or hereafter developed, including but not limited to all forms of television, production and broadcasts . . . ." Id. at Exhibit 1. As part of this, the agreement provided that Plaintiff and Defendant were to "divide equally . . . any and all income, fees, royalties, gifts, bonuses, share of profit and all other participations derived from television (live or taped), pay per view, dvd and tape sales, and all other exploited media . . . generated from the Event . . . ." Id. In addition, the agreement provided that the Plaintiff and Defendant "shall own equally, in perpetuity all rights of whatever kind and character throughout the universe in and to the Event, all films, recordings, prints, copies and other uses thereof and the results and proceeds of Participants participation hereunder and all rights therein, for any and all purposes whatsoever." Id.

According to Plaintiff's Amended Complaint, prior to the event, Defendant approached "WEC officials and told them he had located two independent companies, Prime and Galvant, that would be appropriate to use to film, produce and distribute video of the Palace event." Id. at ¶ 26. Plaintiff alleges that based on Defendant's urging, Plaintiff entered into an agreement with Prime. Id. at ¶ 27. However, Plaintiff asserts "contrary to the representations" made by Defendant, Defendant "was intimately involved

1  with both Prime and Galvant." Id. at ¶ 28.  Plaintiff further alleges that Defendant was "an
2  officer director and/or owner of Prime and Galvant," and that if Plaintiff had been aware of
3  this connection, "it would not have entered into" the agreement with Prime upon the same
4  terms and conditions that were contained therein, if at all." Id. at ¶ 28-29.

5  Following the event on March 27, 2003, Plaintiff alleges that Defendant
6  inappropriately used Plaintiff's trademarks to "independently produce, distribute and sell
7  DVDs and exploit footage of the Palace event." Id. at p. 5.  Further, Plaintiff asserts that
8  Defendant "wrongfully, and without permission or authority, made use of" Plaintiff's
9  trademarks.  Id. at ¶ 34.

10  As a result of the alleged wrongful use of Plaintiff's trademarks, Plaintiff filed an
11  Amended Complaint (#42) on July 20, 2007.  In that complaint, Plaintiff alleged causes of
12  action for (i) Trademark Infringement under 15 U.S.C. § 1114; (ii) Unfair Competition under
13  15 U.S.C. § 1125(a); (iii) Trademark Dilution under 15 U.S.C. § 1125(c); and (iv) Common
14  Law Trademark Infringement.  In addition, Plaintiff alleged several state law claims
15  including fraudulent inducement.

16  In response, on September 7, 2007, Defendant filed a Motion to Dismiss pursuant
17  to FRCP 12(b)(6).  Defendant asserts that the trademark claims should be dismissed
18  because Defendant had Plaintiff's consent to use the trademarks. (Motion to Dismiss (#43)
19  at p. 2.)  In this regard, Defendant alleges that the agreement between the parties gave
20  Defendant a right to exploit the event as well as an ownership interest in the event.
21  Further, because the event was titled "WEC - Return of a Legend," Defendant states he
22  had Plaintiff's express permission to use the WEC trademarks. Id. at p. 5.  Moreover,
23  Defendant alleges that Plaintiff "has done more than contractually agree that the other
24  party may use WEC's purported trademark; it has expressly acknowledged that the other
25  party is an *owner* of the mark. . . ." Id. at p. 6.
26  ///

1    Defendant also argues that Plaintiff's trademark dilution claim should be dismissed
2    because Plaintiff has not provided any facts that its trademarks are famous. Id. at p. 7.
3    Finally, Defendant moves this Court to dismiss Plaintiff's fraudulent inducement claim
4    because Plaintiff allegedly failed to comply with Rule 9(b) of the Federal Rules of Civil
5    Procedure which requires that fraud be pleaded with particularity. Id. at p. 8.

## ANALYSIS

When considering a motion to dismiss for failure to state a claim under FRCP 12(b)(6), the court must accept as true all material allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 (9th Cir. 2000). The allegations of the complaint also must be construed in the light most favorable to the nonmoving party. Shwarz v. U.S., 234 F.3d 428, 435 (9th Cir. 2000). Dismissal is appropriate "only if it clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988). The court need not, however, accept as true those allegations that (1) contradict matters properly subject to judicial notice; (2) are conclusory allegations of law, mere legal conclusions, unwarranted deductions of fact, or unreasonable inferences; (3) are contradicted by documents referred to in the complaint; or (4) are internally inconsistent. Shwarz, 234 F.3d at 435; Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998); Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

Although a court's review on a 12(b)(6) motion to dismiss is "limited to the contents of the complaint," the court may also consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without

///

4

converting the motion into a motion for summary judgment. See Durning v. First Boston Corp, 815 F.2d 1265, 1267 (9th Cir. 1987). Accordingly, this Court has properly considered the exhibits attached to the Complaint in ruling on this motion.

**I.    Claims of Trademark Infringement and Unfair Competition**
        (First and Second Causes of Action)

The Trademark Act of 1946 ("Lanham Act") prohibits uses of trademarks, trade names, and trade dress without the consent of the trademark registrant that are likely to cause confusion about the source of a product or service. See 15 U.S.C. §§1114, 1125(a). Thus, there are two core elements of any federal trademark infringement cause of action. The first is whether an alleged trademark infringer's use of a mark was with the consent of the registrant. The second is if that use creates a likelihood that the consuming public will be confused as to who provides what service. Brookfield Communications, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1053 (9th Cir. 1999). These two elements are also the dispositive issues with regard to state and common law infringement claims, a claim under 15 U.S.C. § 1125(a), and unfair competition under Nevada law. See M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1080 (9th Cir. 2005); see also New West Corp. v. NYM Co., 595 F.2d 1194, 1201 (9th Cir.1979) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical - is there a 'likelihood of confusion?' ") (federal claims); Caesars World, Inc. v. Milanian, 247 F. Supp.2d 1171, 1193 (D. Nev. 2003) (citations omitted) (state claims).

Generally, a likelihood of confusion exists when a consumer viewing a trademark is likely to purchase the services under a mistaken belief that the services are, or are associated with, the services of another provider. Murray v. Cable Nat'l Broad. Co., 86 F.3d 858, 860 (9th Cir. 1996). The confusion must be a probability, not simply a possibility. Id. To determine whether a "likelihood of confusion" exists between the parties' allegedly

related services, the Court must apply an eight-factor test that was originally set forth by the Ninth Circuit Court in <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 348-49 (9th Cir. 1979) (abrogated in part on other grounds by <u>Mattel, Inc. v. Walking Mountain Prod.</u>, 353 F.3d 792 (9th Cir. 2003)).  The so-called <u>Sleekcraft</u> factors are:

> (1) strength of the mark;
> (2) relatedness of the goods or services;
> (3) similarity of the marks;
> (4) evidence of actual confusion;
> (5) marketing channels used;
> (6) the degree of care likely to be exercised by the purchaser;
> (7) defendant's intent in selecting the mark; and
> (8) likelihood of expansion into other markets.

<u>See</u> <u>Surfvivor Media, Inc. v. Survivor Productions</u>, 406 F.3d 625, 631 (9th Cir. 2005) (citations omitted).  The test for applying these factors is fluid and a plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of the factors.  <u>Id.</u>

Although likelihood of confusion is a core element to a trademark infringement claim, at issue in this motion is whether Defendant had Plaintiff's consent to use its trademarks.  In their motion, Defendant argues that it had Plaintiff's permission to use the trademarks and that the agreement between the parties made Defendant an owner of the trademarks.  As such, Defendant argues he is entitled to a motion to dismiss on Plaintiff's trademark claims.

Although it is true that the Lanham Act only protects the unauthorized use of a trademark, this Court finds that an order dismissing this case for failure to state a claim is inappropriate.  The agreement between the parties does not address the issue of the trademarks involved.  Although the agreement states that Defendant is an owner of the event, such provision is silent as to the use of Plaintiff's trademarks.  Because the

1 agreement is silent on this issue, the Court will not infer, on a motion to dismiss, that the
2 ownership provision that relates to the event extends to the trademarks at issue.  In
3 addition, the agreement is silent as to whether Defendant had permission to use Plaintiff's
4 trademarks in exercising his right to exploit the event.  Although the title of the event
5 included the "WEC" trademark, it is not clear from the agreement whether Defendant had
6 consent to use Plaintiff's trademarks above and beyond the name of the event.  Because
7 the agreement is silent, the Court will not make such an inference at this stage.

8 Thus, having examined the Complaint and arguments of counsel, and accepting the facts alleged by Plaintiff to be true, the Court finds that Plaintiff has adequately pleaded facts supporting its infringement and unfair competition claims, at least in theory, and deserves an opportunity to support its claims with additional evidence.  Accordingly, these claims will not be dismissed.

**II.    Trademark Dilution Claim**
       (Third Cause of Action)

In its Third Cause of Action, Plaintiff asserts that Defendant's use of Plaintiff's trademarks "have and will cause dilution of the distinctive quality of plaintiff's trademark and will otherwise cause irreparable injury to plaintiff's business, reputation, and goodwill." (Amended Complaint (#42) at p. 9).  To allege a claim under the Federal Trademark Dilution Act ("FTDA") a plaintiff must show that "(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; and (3) the defendant's use began after the plaintiff's mark became famous."  Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 1010 (9th Cir. 2004) (quoting Avery Dennison, 189 F.3d at 873-74).[1]

---

[1] Nevada's dilution cause of action is substantially similar to the FTDA, in that it provides injunctive relief if the plaintiff can demonstrate commercial use of the mark and such use "[b]egins after the mark has become famous [and] [c]auses dilution of the mark."  N.R.S. § 600.435.  The eight factors for determining whether a mark is famous in Nevada are equivalent to the factors used in a famousness determination

7

In the dilution context, likelihood of confusion is irrelevant. Avery Dennison, 189 F.3d at 875 (citing 15 U.S.C. § 1127). The Ninth Circuit has indicated that "[d]ilution is a cause of action invented and reserved for a select class of marks--those marks with such powerful consumer associations that even non-competing uses can impinge their value." Id. at 875. Thus, to be protectable, a famous mark "must be truly prominent and renowned." Thane Int'l, 305 F.3d at 907-08 (quoting I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 46 (1st Cir.1998)). The FTDA provides a non-exclusive list of factors that courts may consider in determining whether a plaintiff's mark is "distinctive and famous":

> (A) the degree of inherent or acquired distinctiveness of the mark;
> (B) the duration and extent of use of the mark in connection with the goods or services;
> (C) the duration and extent of advertising and publicity of the mark;
> (D) the geographical extent of the trading area in which the mark is used;
> (E) the channels of trade for the goods or services with which the mark is used;
> (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom an injunction is sought;
> (G) the nature and extent of use of the same or similar marks by third parties; and
> (H) whether the mark was registered.

15 U.S.C. § 1125(c)(1)(A)-(H).

In addition, despite its repeated admonition that only truly prominent and renowned marks deserve protection, the Ninth Circuit has decided that marks famous in only a limited geographic area or a specialized market segment can be considered "famous" and therefore entitled to protection from dilution. Thane Int'l, 305 F.3d at 908 (citing Avery Dennison, 189 F.3d at 877 )("fame in a localized trading area may meet" the famousness requirement as may fame in a specialized market segment when the "diluting uses are directed narrowly at the same market segment"). So-called niche fame protection is,

---

under 15 U.S.C. § 1125(c)(1)(A)-(H). Thus, although Nevada's dilution statute has not been applied by any court, it appears to protect only famous marks, like the FTDA.

however, limited. Id.  A mark not famous to the general public will be protected only if the mark is famous within a specialized market niche *and* the alleged diluter uses the mark within the same niche market. Id.

Defendant argues that Plaintiff's trademark dilution claims must be dismissed because Plaintiff failed to allege any supporting facts that its marks are famous. However, applying the standard governing motions to dismiss and accepting all factual allegations regarding fame and distinction pleaded in the complaint as true, the Court finds that Plaintiff has sufficiently plead its claim for dilution under both federal and state laws. Plaintiff does not need to provide evidence, at this stage, that its mark is famous. Rather, Plaintiff must plead the elements of a dilution claim sufficient to set forth a claim for relief. Plaintiff's dilution claim satisfies this standard. Therefore, at this stage of pleading, Defendant is not entitled to dismissal of Plaintiff's state and federal trademark dilution claims.

**III.  Fraudulent Inducement Claim**
       (Seventh Cause of Action)

Plaintiff alleges that Defendant engaged in fraudulent inducement by making "false representations regarding his relation, or lack of relation to Prime and Galvant prior to plaintiff's negotiation concerning and entry into the WEC/Prime-Galvant Agreement." (Amended Complaint (#42) at ¶ 80).  A claim for fraudulent inducement includes the following elements: (i) a false representation made by the defendant; (ii) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (iii) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (iv) damage to the plaintiff as a result of relying on the misrepresentation. Barmettler v. Reno Air, Inc., 114 Nev. 441, 446-47, 956 P.2d 1382, 1386 (Nev. 1998).

///

Under FRCP 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." As such, "when averments of fraud are made, the circumstances constituting the alleged fraud [must] 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003)(quoting Bly-Magee v. California, 236 F.3d 1014 (9th Cir. 2001)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Id. (quoting Cooper v. Pickett, 137 F.3d 616 (9th Cir. 1997)). "A plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." Id. (internal citations omitted).

The Court finds that the fraudulent inducement claim meets the particularity requirement of FRCP 9(b). Paragraphs 26 through 29 of the Amended Complaint set forth specific details relating to the Plaintiff's fraudulent inducement claim. Those paragraphs are sufficient to give Defendant notice of the particular conduct at issue and provide detail beyond the neutral facts by which Defendant can answer the charge. As such, Defendant's motion to dismiss this claim is denied.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss (#43) is DENIED.

IT IS SO ORDERED.

Dated this 5th day of February, 2008.

_____
United States District Judge